## DAVIS *vs.* POLICE JURY OF CONCORDIA.

APPEAL FROM THE COURT OF THE NINTH DISTRICT FOR THE PARISH OF
CONCORDIA, THE JUDGE THEREOF PRESIDING.

Evidence not pertinent to the issue may be admitted, and the effect of it be
afterwards considered.

In a claim for right of ferry, evidence is admissible to show, the land purchased
was not worth the price paid, without the right of ferry attached to it. The
effect of it should be weighed with other circumstances.

Where the claim to a right of ferry depends on a condition, evidence should be
received to show the condition has not been performed.

The certificate of the commandant, stating that a certain road was made, as re-
quired by the condition of a grant of the right of ferry, is not conclusive,
but only *prima facie* evidence of the fact, which may be contradicted.

Evidence is admissible to show that a ferry, which is claimed under an exclu-
sive grant from the Spanish government, was in fact kept under the control
and supervision of the Police Jury.

Instruments, such as grants, certificates, &c., are admissible in evidence, with-
out proof of the signatures. They are *prima facie* evidence; and may be
contradicted by showing, that they were not acting in the capacity they pur-
port.

The transfer of a grant or privilege may be proved by comparison of handwri-
ting, when the signature of the witness is shown to be genuine, and he is dead.

WESTERN DIS.
October, 1841.

DAVIS
vs.
POLICE JURY OF
CONCORDIA.

This suit commenced by injunction. The plaintiff alleges, that on the 19th February, 1801, the Marquis de Casa Calvo, then governor general of the province of Louisiana, granted to one Thomas Thompson, then a resident of Concordia, the perpetual privilege of keeping a ferry across the Mississippi river at the post of Concordia, as a privilege attached to his plantation ; and on condition that he would clear and open a certain public road or highway from the post of Concordia to the bayou Crocodile, in the district of Concordia.

The plaintiff further alleges, that Thompson fully performed the condition of his grant by making said road, and enjoyed all the privileges and emoluments of said ferry until the 16th Oct., 1803, when he sold and transferred them to J. Vidal, for $4000, when the whole would not have been worth $800 without said ferry and the privileges thereto attached. That Vidal continued to own, possess and enjoy said ferry with its privileges and the plantation, until in the year 1817 they were sold and transferred to this petitioner, who has continued to own and possess them. He expressly alleges, that he has the exclusive right to keep a ferry across the Mississippi, according to the usages and laws of the Spanish government, for one league above and below the post of Concordia, which is also secured to him by the said grant to Thompson. He alleges, that the Police Jury of the parish of Concordia claim to exercise the right to sell or lease out said ferry in violation of his rights and grant; and that in April, 1839, they passed an ordinance to take possession, lease and sell out to the highest bidder all the privileges and rights to keep a public ferry at the place specified in his grant, and in violation thereof. He prays, that the Police Jury be enjoined from proceeding any further in said matter ; that their ordinance be declared null, and that his interest in the same greatly exceeds $300 ; he prays for general relief, and that his rights, privileges and grant to said ferry be confirmed to him.

The defendants admitted their proceedings to take possession and sell out the ferry in question, for the benefit of the parish.

They deny the exclusive right or privilege of the plaintiff to said ferry. That if any grant was ever made, it is inoperative and null, because its terms and conditions were never complied with by the grantee; and neither the plaintiff or grantee ever exercised the rights and privileges now claimed, or kept up a ferry, therefore, if they ever had any such rights or privileges, they are forfeited by *non-user*. They aver, their ordinance is legal and valid; that the Police Jury possess the right and authority to pass it and use said ferry for the benefit of the parish. They pray, that the injunction be dissolved with $1000 damages, and that they be quieted in their rights and authority to lease out and sell the same for the parish of Concordia.

Upon these pleadings and issues the case was tried.

The plaintiff founds his pretensions on the following documents:

" Mr. Commandant of the Post of Concordia.

" Thomas Thompson with due respect represents and sayeth: that as there are no more than 5 inhabitants now established here, we cannot incur the expenses of a road, unless the King pays us our work; and whereas his excellency the Governor has granted to Don Juan Heverard the ferry of Black River, for making a road at his *expense* from said river to the Bayou Cocodrillo: the petitioner proposes, that from the Post to Bayou Cocodrillo he will likewise make the road of 30 or 40 feet wide, at his expense, with the condition, that he may be granted to hold the ferry from his plantation to the landing of Natchez, as a privilege attached to his plantation; to which effect he promises to keep flats and other necessary boats to the purpose. This favor he expects to receive from you.

" Thomas Thompson."
" Concordia, 27th January, 1801."

" His Excellency the Governor.

" The proposition made by the petitioner is similar to that you were pleased to grant to Don Juan Heverard. The small number of inhabitants residing at this post, does not permit,

**Western Dis.** *October*, 1841.

DAVIS *vs.* POLICE JURY OF CONCORDIA.

WESTERN DIS.
October, 1841.

DAVIS
vs.
POLICE JURY OF
CONCORDIA.
that they employ themselves in an undertaking so costly, unless they be compensated, as I have exposed to your excellency on this subject: considering the advantages which will result, I recommend to your excellency to grant the prayer of the petitioner, who is a person capable of fulfilling what he proposes : Providing, it may please your excellency to grant the privilege which he solicits.

"JH. VIDAL."

"Concordia, 31st January, 1801."

"New Orleans, 19th February, 1801.

"Thomas Thompson conforming himself to make the road which he proposes, at his expense, under the inspection of the Commandant of the Post of Concordia, *I grant him* the privilege he prays for, to be attached to the plantation he possesses, in order that from that place, with the exclusive privilege, he may carry on the ferry of the river; demanding and receiving only the prices most equitable and customary which may be established by knowledge of said commandant.

"EL MARQUIS DE CASA CALVO."

"Whereas Thomas Thompson has complied with the conditions which he offered in his memorial; and that he has executed under my inspection what was prescribed to him by his excellency the governor in his anterior decree, I deliver these unto him, that he may make them valuable, and possess himself of the exclusive privilege granted to him of the ferry from this Post to the landing of Natchez.

"JH. VIDAL."

"Concordia, 16th February, 1802."

This privilege or grant, so far as it attached to the plantation, was transferred from Thompson, through Vidal himself, to the plaintiff.

On the trial the defendant's counsel offered a witness to prove, that Thomas Thompson never did cut out the road to the Bayou Crocodile from the Post of Concordia, as he proposed to do in his petition to the Marquis de Casa Calvo,

WESTERN DIS.
*October*, 1841.

DAVIS
*vs.*
POLICE JURY OF
CONCORDIA.

for the privilege of keeping a ferry from his plantation to Natchez, which testimony was objected to on the ground, that it contradicted the certificate of Vidal, the commandant, that he had done so; that the road had been cut by said Thompson as he proposed and was required to do. The court sustained the objections, and the defendant's counsel excepted to the opinion of the court.

There was judgment for the defendants, dissolving the injunction, and that they recover $400 from the plaintiff for the use of the parish; the plaintiff appealed.

*Elgee & A. N. Ogden*, for the plaintiff.

*Stacy*, for the defendants.

*Garland, J.* delivered the opinion of the court.

The plaintiff alleges, that he is the owner of an exclusive privilege or right of ferry across the Mississippi river, from the place known as the post of Concordia, in that parish, to the city of Natchez. That his exclusive privilege extends one league above and below the point or place named in his grant, which is the front of a tract of land of eight arpents on the river, granted to Thomas Thompson, to whom this exclusive privilege was also granted, as one annexed to the land, by the Governor General of Spain in the province of Louisiana. This grant, he says, was made on the condition, that Thompson should clear a public road or highway from the said Post of Concordia to the Bayou Crocodile, which condition he specially alleges has been performed.

He further states, that the Police Jury of the parish have passed an ordinance directing the parish treasurer to sell at public or private sale, the exclusive privilege of keeping a ferry for a certain length of time across the aforesaid river at the same place, where his (plaintiff's) ferry crosses, which will be a great injury to him; that said parish treasurer is about to proceed to make a sale of said privilege, and will do so, unless

WESTERN DIS. restrained by law. He prayed for damages and an injunction
October, 1841. to arrest the execution of the ordinance.

DAVIS
vs.
POLICE JURY OF
CONCORDIA.

The defendants admit the passing the ordinance, say it was legal and valid, and avow their intention to have it executed unless prevented. They deny any exclusive privilege of keeping a ferry was ever granted by competent authority to Thompson, and if any ever was, they say it is null and void, because the terms and conditions have not been complied with or performed by the grantee or those holding under him ; and that it has been forfeited by non-user. That by the interference of the plaintiff with their just rights, they have sustained heavy losses ; they ask for a dissolution of the injunction and one thousand dollars damages.

The cause was tried by a jury ; there was a " verdict for defendants with $400 damages," on which the court rendered judgment, dissolving the injunction, and decreed the plaintiff 'to pay the four hundred dollars, from which he appealed.

The plaintiff produced as evidence the petition of Thomas Thompson, addressed to the Commandant of the Post of Concordia, representing the importance of having a road from that place to the Bayou Crocodile, and the inability of the inhabitants to make it, without their expenses being paid by the government ; he therefore proposes to make a road thirty or forty feet in width, provided the privilege of a ferry from his plantation to the landing at Natchez is granted him, this privilege to be attached to the plantation. He promises, if the ferry is granted, to keep the necessary flats and boats to transport passengers, &c. The commandant Don José Vidal certifies to the governor, at the foot of the petition, the importance of the work, the inability of the inhabitants to perform it, the ability of Thompson to do what he promises, and recommends the propriety of the grant. These documents were presented to the Marquis de Casa Calvo, who on the 19th of February, 1801, says, that if the petitioner shall make the road he proposes, under the inspection of the commandant, he grants him the privilege he asks, to be attached to his plantation ; that from

WESTERN DIS.
*October*,1841.

DAVIS
*vs.*
POLICE JURY OF
CONCORDIA.

that place he shall have the exclusive privilege of a ferry across the river, demanding and receiving such tolls as shall be fixed by the commandant. It is proper to observe here, that the Marquis de Casa Calvo does not take upon himself any official capacity in this act, and the history of the province of Louisiana is silent as to his ever having been governor, unless he acted as such ex officio during the period between the death of governor Gayoso, which occurred in the summer of 1799, and the arrival of Salcedo, who was appointed military and political governor on the 21st of November, 1799; or in the absence of the latter on some occasion.

On the 16th of February, 1802, Don José Vidal, the commandant, certified, that the condition specified in the memorial had been performed under his inspection, and that Thompson was vested with the exclusive privilege granted. On the 13th of·September, 1803, Thompson conveys the tract of land, without saying anything about the ferry, to Don José Vidal, in consideration of the sum of $4000 paid down, and on the 16th of October following he transfers in writing on the back of the paper purporting to grant, to the same person, all the right, title, claim and interest to the privilege granted, having, as he. says, sold to him the plantation, to which the said right of ferry is annexed.

This tract of land, with the right of ferry attached, and another tract adjoining, Vidal in 1817 sold to the plaintiff, who has ever since kept up a ferry, but had the landing place on the adjoining or Vidal tract, as his immediate vendor seems also to have had.

A great deal of testimony was taken on both sides to show, Thompson had or had not used the grant, and that Vidal· and Davis, his assignees, had never used it from the front of the Thompson tract, but from a point a quarter to a half mile above. Each party endeavored to exclude as much of·the testimony of his opponent·as possible, and both have so far succeeded as to bring the case before us in a very unsatisfactory manner, and,

WESTERN DIS.
October, 1841.

DAVIS
*vs.*
POLICE JURY OF
CONCORDIA.

in such a situation as prevents us from doing justice between them, as it stands.

On the trial the plaintiff, having proved, that there had always been a ferry kept by him and Vidal, on a tract of land belonging to them, adjoining to the Thompson tract, offered to prove the public convenience was promoted by the ferry being kept at that point, which evidence the judge refused to admit, and plaintiff excepted. We think the judge erred. The evidence ought to have been admitted, and the effect of it afterwards considered. We think the judge also erred in excluding the evidence offered by plaintiff, to show that the Thompson tract of land was not worth at the time it was sold $4000, without the right of ferry. It ought to have been received, and the effect weighed with other circumstances.

We further think the judge erred, in excluding the evidence offered by defendants, to prove Thomas Thompson never did make the road from the river to the Bayou Crocodile, as stated in the certificate of the commandant. The making of that road was the consideration for the grant; the plaintiff in his petition tendered the defendants an issue on that point, in which they joined by a special denial. The plaintiff was permitted to show by the commandant's certificate the condition was performed, and the district judge was wrong in holding it to be conclusive. We think it only *prima facie* evidence, which the defendants may contradict. The commandant did not act in the matter in any judicial capacity, he was only a commissioner or superintendant, to see a particular work was executed ; and no more sanctity is to be attached to his certificate, than to presume he did his duty, and told the truth ; and thereby throw the burden of proving a negative on the other party.

We think the judge also erred in excluding the documents I, J, K and L offered by the defendants, to prove that, although the plaintiff had kept a ferry at the place he did, it was under the supervision and control of the Police Jury. The evidence was clearly admissible, to show an interruption or want of the prescriptive right set up by plaintiff.

The judge did not err in admitting in evidence the record books from the parish judge's office, to prove the recording of the acts therein contained, nor did he err in permitting a per- son, who on oath said he understood the Spanish language, to read and translate those records to him and the jury, they not understanding that language.

We further think, the judge did not err in admitting in evidence the instrument purporting to be the petition of Thomas Thompson, and the recommendation by Vidal as commandant, and the grant signed by the Marquis de Casa Calvo, without proof of the signatures. They are *prima facie* evidence. That Vidal was the Commandant of the Post of Concordia at the time, is a matter of history; that Casa Calvo was about that time an officer of high authority in a military capacity, is also known; and it is possible he may have exercised some civil function, as was frequently the case under the Spanish government; but we do not believe he ever had a commission as Governor of the province of Louisiana. Salcedo, we have stated, was appointed military and political governor in November, 1799, and he continued to be such at the time Spain transferred the province to France, on the 30th of November, 1803, on which occasion he and Casa Calvo acted as the commissioners of the King of Spain, to deliver the country. Casa Calvo then was styled a brigadier in the King's armies, &c. 2 Vol. Land Laws, Appendix I, p. 165; Idem, p. 529. This evidence being *prima facie*, the defendants are at liberty to contradict it, and may show, that the Marquis de Casa Calvo was not governor or acting as such at the time of the grant. But until some sufficient evidence is given to the contrary, we will presume an authority existed. 12 Peters, 410.

We think the judge did not err in admitting the transfer of the privilege or grant by Thompson to Vidal, to be proved by comparison, after the signature of Minor, the subscribing witness, was proved, and it was shown he was dead. Had these facts not been shown, we think the comparison ought to have been made with more than one authentic or admitted signature.

WESTERN DIS. O. C. C., p. 306, art. 226; L. C., art. 2241; 2 M. R., 203;
October, 1841. 9 L. R., 521; 11 L. R., 251; 1 N. S., 486.

The judgment of the District Court is therefore annulled, avoided and reversed, the verdict of the jury set aside, and it is further ordered, that this case be remanded to the District Court, with directions to the judge to conform in the admission or rejection of testimony to the principles herein expressed, and otherwise to proceed according to law, the defendants and appellees paying the costs of this appeal.